# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL AIR TRANSPORT CO., INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 12 C 5747 ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Continental Air Transport, which operates a van shuttle service in Chicago, has sued the United States under 26 U.S.C. § 7422, alleging that it is entitled to a refund for taxes and penalties that it says the Internal Revenue Service wrongfully assessed for its gasoline usage. Continental has moved for summary judgment on its claims. The government has conceded the claim on penalties it assessed against Continental but has cross-moved for partial summary judgment on Continental's refund claim. For the reasons stated below, the Court grants Continental's motion in part and denies it in part and denies the government's motion.

### Background

Continental is a transportation services company that ferries passengers primarily between downtown Chicago and the city's Midway and O'Hare airports under the name "Airport Express." It has modified its fifteen-passenger vans to include an aisle between seats and a luggage storage area, thus allowing up to ten passengers

and their luggage.  The company runs its vans along specified "routes," some of them color-coded.  The Red Route from O'Hare, for example, has automatic stops at the Chicago Hilton and Palmer House hotels twice every hour, with scheduled stops at other nearby hotels and landmarks (such as Union Station) that occur only by reservation.  *See* Pl.'s Ex. A-2 at 1.  A traveler can make a reservation by phone, online, or through a hotel, choosing scheduled a pick-up time at a specific location.

In an affidavit, John McCarthy, Continental's president and part-owner, says there are three exceptions to the company's route / scheduled pick-up scheme.  First, if a passenger requests a pick-up at a location not on one of Continental's routes, but near one of its automatic-stop hotels, Continental will pick up that passenger while traveling one of its assigned routes.  McCarthy estimated such stops account for eight to eleven percent of passengers picked up along Continental's scheduled routes.  Second, a group of six to ten passengers requiring transportation from a single hotel to one airport may get its own Continental van, which travels directly from the hotel to the airport without other stops.  McCarthy said these trips "accounted for less than 1% of the total passengers transported" during the time period at issue here.  Pl.'s Ex. A ¶ 38.  Finally, Continental sometimes will shuttle a "small group between a Downtown hotel and some other location, like a sports or music venue."  *Id.* ¶ 39.  McCarthy estimated that such trips amounted to "less than .7%" of Continental's total passengers.  *Id.*

Like anyone who buys gasoline, Continental pays federal excise taxes when it fills up the tanks in its vans.  At the end of each quarter in 2008 and 2009, and after the first quarter of 2010, Continental filed refund claims with the IRS for the excise tax it paid.  For each quarter in 2008 and 2009, the IRS paid the refund, but it began an audit

of Continental in April 2010 for the period from 2008 through the first quarter of 2010. The IRS determined that Continental's vehicles did not qualify as "automobile buses," a prerequisite to receiving a gasoline excise tax refund from the government under 26 U.S.C. § 6421(b). The IRS report's conclusion stated: "Taxpayer is not entitled to the refund of excise taxes paid for gasoline fuel. The company does not use buses . . . ." Pl.'s Ex. D-2 at IRS000742. It sent Continental a letter assessing excise taxes of $152,305.81 and a penalty of $279,861.16 under 26 U.S.C. § 6675(a), which permits a double penalty for "excessive" tax claims.

After filing an unsuccessful protest with the IRS, Continental in September 2011 paid the taxes and penalties assessed for the quarter ending March 31, 2009: $14,403.66 in gasoline taxes and $28,807.32 in penalties. It then filed an amended excise tax return for that quarter, seeking a refund of the taxes and penalties it had just paid. A month later, in October 2011, the IRS sent Continental a check for $25,426.54; the parties disagree on whether it was a partial refund of the penalties Continental had paid. In November 2011, the IRS sent Continental a "Notice of Case Resolution" document stating that Continental owed no excise tax for the periods in question, save for the periods ending March 31, 2009 and March 31, 2010. Finally, in December 2011, the IRS told Continental it was disallowing its refund claim of $432,166.97 for the periods in question.

## Discussion

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the court assesses whether

3

each movant has satisfied the requirements of Rule 56. See *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

The Internal Revenue Code includes a subsection directing the IRS to make refunds to certain entities and individuals who pay excise taxes on gasoline, under the heading "Intercity, local, or school buses":

> [I]f gasoline is used in an automobile bus while engaged in . . . furnishing (for compensation) passenger land transportation available to the general public, . . . the Secretary shall pay (without interest) to the ultimate purchaser of such gasoline an amount equal to the product of the number of gallons of gasoline so used multiplied by the rate at which tax was imposed on such gasoline by section 4081.

26 U.S.C. § 6421(b)(1)(A). The next subsection states that the refund requirement does not apply with regard to "gasoline used in any automobile bus while engaged in furnishing transportation which is not scheduled and not along regular routes unless the seating capacity of such bus is at least 20 adults (not including the driver)." *Id.* § 6421(b)(2). The statute does not define "automobile bus" or "regular routes." Nonetheless, the definition of both terms is central to this dispute. If Continental is not an automobile bus operator, or does not operate its vehicles on regular routes, both parties agree it is not entitled to the refund. The Court will address each term in turn.[1]

---

[1] The government has expressly conceded one of Continental's claims: that it is entitled to the remainder of the refund it claimed the government owed after erroneously imposing penalties under 26 U.S.C. § 6675. Continental is therefore entitled to summary judgment on its claim of $3,380.78, plus statutory interest.

4

### A.   "Automobile bus"

Continental argues that its vans should be considered "automobile buses" for purposes of section 6421, relying on what it calls "established IRS authority" and legislative history, as well as the sole case that has construed the term thus far. *See* Pl.'s Mem. at 4.  The company points to a 1970 IRS ruling stating that a "modified passenger sedan or station wagon" possessed the functions of a bus and argues a van is even more like a bus than either of those vehicles.  *See id.* (citing Rev. Rul. 70-9, 1970-1 C.B. 216, 1970 WL 21126).  Continental also cites a 2010 letter from then-Treasury Secretary Timothy Geithner to various members of Congress, informing them that the IRS was "developing guidance" that would not exclude vans from the class of vehicles qualifying for the gasoline excise tax exemption.  *See id.* at 8–9 (citing Letter from Timothy F. Geithner, Sec. of the Treasury, to Sen. Kirsten Gillibrand (June 2, 2010), *available at* 2010 WL 2481970).  (Whether this guidance was ever issued is unsaid.)  Continental also cites a 1977 Senate report, from which it draws an inference that the Senate assumed vans were covered under the gas tax exemption.  Finally, Continental argues that the United States Tax Court explicitly declined to rule on whether vans counted as buses under the statute when it addressed the "automobile bus" term in 2006, as did Eleventh Circuit on appeal.  *See Med. Transp. Mgmt. Corp. v. Comm'r*, 127 T.C. 96 (2006), *aff'd*, 506 F.3d 1364 (11th Cir. 2007).

The government nonetheless bases its argument on the Tax Court's decision in *Medical Transport*.  Def.'s Mem. at 4.  It contends that the Tax Court's reliance on the word "omnibus" to guide its construction of "automobile bus" supports the notion that vans are not buses.  The Tax Court's cited definition of "omnibus," for which "bus" is an

5

abbreviation, included the term "designed to carry a comparatively large number of passengers." *Med. Transp.*, 127 T.C. at 102. The government proceeds to use a dictionary to define "large" as "[o]f greater than average size," and concludes that because Continental has modified fifteen-passenger vans to carry ten people, the vehicles' capacity is not "greater than average" or "comparatively large." Def.'s Mem. at 5 (quoting *American Heritage Dictionary* (2d ed. 1982) (no page number provided)).

To begin with the statute itself, section 6421 suggests no definition of "automobile bus," and the term is not—or is no longer—used in everyday parlance. The Eleventh Circuit's opinion on this question discussed a possible reason for the inclusion of the modifier "automobile" for "bus": "When Congress amended section 6421(b) in 1978, Congress had long used the adjective 'automobile' in tax statutes in reference to motor-driven vehicles." *Med. Transp.*, 506 F.3d at 1368 (citing examples). The court reasoned that "automobile" is simply a modifier for "bus," meaning a bus with its own power source; it used a dictionary to define "bus" as "a large motor vehicle designed to carry passengers." *Id.* (citing *Merriam–Webster Coll. Dictionary* 154 (10th ed. 1996)).

The Court agrees with the Eleventh Circuit's definition of the term, which accords with what a typical person would consider a "bus." Although the Eleventh Circuit "le[ft] for another day the question whether a van or other vehicle can be classified as a bus," *id.* at 1369, there is no issue of material fact about whether Continental's vans logically fit within that court's definition of the term. The vans are large—certainly larger than typical four-door passenger cars, vans, or SUVs, from the photos Continental has provided—and they are designed to carry passengers; that is their primary function. They have side-opening doors like a bus (although not the accordion-style doors often

6

seen on city and school buses), and they have been modified so that there are aisles for passenger entry and exit.  Although the vans obviously do not resemble typical buses, they are more bus-like than other passenger vehicles, including the sedans at issue in *Medical Transport*.

The government's argument on this point is unavailing.  It latches onto the phrase "greater than average" from its definition of the term "large," arguing that because Continental modified fifteen-passenger vehicles to fit ten people, its vans are not "relatively large."  One can infer from this that unmodified fifteen-passenger vans fit the government's interpretation, but not ten-passenger vans.  The government provides no explanation of why the difference matters for its definition of "large."  Would this mean, for example, that an eight-passenger van qualifies for the tax refund, so long as it is not modified to fit five passengers?  In short, there is no limiting principle for the government's interpretation.

In sum, the Court agrees with Continental that no reasonable fact finder could find that its vans are not automobile buses for purposes of 26 U.S.C. § 6421(b).

**B.** **"Regular routes"**

As discussed above, section 6421(b)(2) precludes an excise tax refund with regard to gasoline used in an "automobile bus" providing transportation that "is not scheduled and not along regular routes."  The parties dispute whether Continental's van service is along regular routes.  Continental argues that "well established common carrier law" shows that its routes are regular, citing a 1948 district court case and a 1995 decision of the Surface Transportation Board that appeared to examine the "essential character of the operations at issue" in deciding whether to deem a service

7

"regular-route." Pl.'s Mem. at 11 (citing *State of New Jersey—Petition for Declaratory Order—Scope of Intrastate Passenger Authority*, S.T.B., 1995 WL 756133 (Dec. 13, 1995)). Continental further contends that the established routes and automatic stops of its vans indicate that they are "consistently running regularly scheduled routes between two fixed locations: an airport and Downtown Chicago." *Id.* at 13. It admits that the stops along those routes sometimes varied based on passenger needs, although it contrasted its system with that in *Medical Transport*, where sedans were assigned based on passengers' individual destinations. Continental also concedes that it provided "discrete trips" to non-airport locations. *Id.* at 14. It argues, however, that section 6421(b)(2) should not be read as inflexible, and it contends that vehicles performing these services were reassigned to a regular route directly afterward.

The government responds by again looking to the Tax Court's decision in *Medical Transport*, particularly a passage citing a 1977 Senate report referring to regular-route service "such as is provided by local transit systems or an intercity bus operation." Def.'s Mem. at 6 (citing *Med. Transp.*, 127 T.C. at 104 (citing S. Rep. No. 95-529, at 55 (1977))). The government then analyzes Continental's van operations, observing that unlike a city bus, a Continental van may deviate from its route once it is full of passengers and proceed directly to an airport, whereas city buses will continue on the given route and discharge passengers while picking up others. It also argues that some of Continental's business is not route-based service, citing Continental's practice of picking up passengers at non-scheduled stops that are near scheduled stops and providing charter service or single-group vans directly between one hotel and an airport or other locations.

Although few would disagree that Continental's services are not exactly like what many city buses do,[2] that is not the end of the matter.  The government focuses on the city bus as a regular-route operation cited in the Tax Court's opinion, but the city bus example the case cites is just that—an example, not a definition.  In fact, Continental's vans are easily distinguished from the sedan service at issue in *Medical Transport*.  In that case, there were "no published timetables," with schedules "prepared the night before the travel day."  127 T.C. at 106.  "[T]here was no way of knowing, short of asking the driver, whether the vehicle followed the same or similar routes as the corresponding run on a subsequent day or week."  *Id.* at 106–07.  Furthermore, "no two manifests contained substantially similar patterns of destinations traveled or pickup/dropoff times."  *Id.* at 107.  In contrast, Continental's service has set, published routes, each with a different name focusing on transit between one airport and a select area of downtown Chicago.  Although the vans do not stop at each hotel listed on its schedule on every trip, they do have mandatory stops, indicating regularity.  The government argues that a full van will dispense with its other stops and proceed to its assigned airport and thus does not have a regular route.  However, it is because of pickups along its regular route that the van fills to capacity; that does not mean that the van lacks regular-route service.  The airport, after all, is part of the van's route.  It could be said that express city buses, which operate between a cluster of stops in one area and then proceed downtown without stopping again, do the same thing when they reach capacity.  The Court therefore agrees with Continental that there is no genuine issue of

---

[2] Actually the differences are not as stark as the government argues.  It is not unheard of, for example, for a city bus that is running a regular route but is completely full of passengers to skip stops, even where potential passengers might be waiting, if no passenger on the full bus has signaled to get off.

material fact over whether these scheduled, route-based van services are "along regular routes" for purposes of 26 U.S.C. § 6421(b)(2).

On the other hand, the government is correct to point out that not all of Continental's van service can be considered "regular route" service. As McCarthy, Continental's president, says in his affidavit, the company sometimes provides what might be called charter services—driving a group from a hotel to "some other location, like a sports or music venue." Pl.'s Ex. A ¶ 39. Although these trips "accounted for less than .7% of the total passengers transported by Continentals vehicles," *id.*, they cannot be considered as following "regular routes." Similarly, Continental's vans sometimes pick up a large group from a single hotel and go straight to an airport, though this accounts for "less than 1%" of all company passengers according to McCarthy. *Id.* ¶ 38. Finally, Continental's vans sometimes deviate from their regular routes to do pickups at non-scheduled locations, thus adding stops based on individual passenger needs. McCarthy explains the percentage of passengers requiring such services differently, saying they account for "8% to 11% of all passengers who were picked up along one of the scheduled routes," *id.* ¶ 37, but not describing their proportion of Continental's total number of passengers. And none of these figures describes what proportion of bus runs is involved, which presumably would be the more significant figure for purposes of gasoline consumption.

In short, although no reasonable fact finder could find that the overwhelming proportion of Continental's van business consists of anything but regular-route service, some small amount is not. The exact percentage is unclear. Although Continental argues that the gasoline tax refund statute should not be held to be "inflexible," the

statute clearly states that a refund is permitted only with respect to gasoline used for regular-route service. *See* 26 U.S.C. § 6421(b)(2) (stating that the statute "shall not apply in respect of gasoline used in any automobile bus while engaged in furnishing transportation which is not scheduled and not along regular routes").

The government advanced what it called a separate argument in its initial brief that Continental failed to submit sufficient records with its claims, adding that Continental's vans did not always perform in ways entitling the company to a gas tax refund. In the government's reply, it essentially contended that Continental had not provided evidence detailing exactly how much gasoline its vans consumed when performing its non-scheduled, non-regular route services. Continental notes that the IRS's examiners had previously found that the company has regular routes, and it says that it should not be encouraged to "engage in absurd behavior" like making superfluous stops to qualify for the refund. Pl.'s Repl. at 6. But Continental nonetheless concedes that it provides some non-scheduled, non-route-based services. Given that admission, the Court concludes that there is insufficient evidence in the record at this point to determine the precise scope of the refund. This is not, however, a reason to deny summary judgment altogether to Continental, given the Court's other conclusions discussed above.

In sum, the Court concludes that Continental is entitled to summary judgment on the issue of liability. No reasonable fact finder could disagree that its vans are automobile buses, and that the overwhelming majority of its routes should be considered regular for purposes of 26 U.S.C. § 6432. There is not enough evidence, however, to make a summary judgment ruling one way or another on the question of

what, if anything, Continental is entitled to receive as a refund from the government—aside from the $3,380.78 in erroneously imposed penalties conceded by the government. *See* n.1 *supra*. The Court therefore determines that further proceedings on the appropriate amount of damages in this case will be necessary.

**Conclusion**

For the foregoing reasons, the Court grants Continental's motion for summary judgment in part [docket no. 31] and denies the government's cross-motion for partial summary judgment [docket no. 35]. The parties are directed to confer regarding what further proceedings will be necessary to bring the case to disposition. A joint status report including each side's position in this regard is to be filed by February 14, 2014. The case is set for a telephone status hearing on February 19, 2014 at 9:00 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 31, 2014